RECEIVED
USDC, WESTERN DISTRICT OF LA
TONY R. MOORE, CLERK
DATE  6 / 3 / 13

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

ALEXANDRIA DIVISION


EDDIE JOE BUSH, et al.,                    CIVIL ACTION
        Plaintiffs                         SECTION "P"
                                           NO. 1:13-CV-00452
VERSUS

FRED PHARIS, et al.,                       JUDGE DEE D. DRELL
        Defendants                         MAGISTRATE JUDGE JAMES D. KIRK



REPORT AND RECOMMENDATION OF MAGISTRATE JUDGE


        Before the court is a verified civil rights complaint filed by
pro se plaintiffs Eddie Joe Bush ("Bush") and Joyce Ann Sutter
("Sutter") on March 1, 2013.  The named defendants are attorney
Fred Pharis, real estate agent Prissy Reap, Sean McGlothlin,
Aleshia McGlothlin, Theresa Murphy a hospital case worker employed
at Christus St. Frances Cabrini Hospital), "Cabrini Notary Public,"
"Nurse Mike" (an employee of Christus St. Frances Cabrini
Hospital), Diana Harris (administrator of Christus St. Frances
Cabrini Hospital), Steven Wright (director of Christus St. Frances
Cabrini Hospital), Officer Andre Williams (employed by the City of
Alexandria Police Department), Detective Wade Bourgeois (employed
by the City of Alexandria Police Department), attorney William B.
Owens a/k/a Bill Owens, Chief Loren Lampert (Chief of the

Alexandria City Police), and Sheriff William Earl Hilton (Rapides Parish Sheriff).

The claims currently before the court are brought solely by plaintiff Bush against Chief Lampert, Sheriff Hilton, and Detective Bourgeois.  Defendants filed motions to dismiss pursuant to Fed.R.Civ.P. rule 12(b) (Docs. 14, 16, 17), alleging a failure to state a claim on which relief can be granted, which Bush opposes (Doc. 27, 28, 29).[1]  Those motions are now before the court for disposition.

Allegations in the Complaint

Plaintiffs allege that, in September 2012, Sutter, an 81 year old woman who lived alone at 431 Camille Street in Alexandria, Louisiana and used a wheel chair, offered to employ Bush, a friend and former employee, because her four late employees had quit or been fired; at least one of the former employees (who had apparently had a revocable power of attorney) had stolen money and charged over $10,000 on her credit card, they had left her home in a grave state of neglect and disrepair, and they had not paid her bills (Doc. 1).  Plaintiffs contend that Sutter's pets' feces were

---

[1] Although extraneous evidence outside of the pleadings is attached to the complaint, it will not be considered with regard to defendants' motions to dismiss.  The extraneous evidence that Pharis' brief directs the court's attention to will not be considered.  Therefore, defendants' motions are considered as motions to dismiss, and not as motions for summary judgment.  See Baker v. Putnal, 75 F.3d 190, 196 (5th Cir. 1996); Fed.R.Civ.P. rule 12(b).

scattered throughout the house, there was trash and garbage strewn about, and her utilities had been cut off.  Plaintiffs allege that, although Sutter filed a police report against the four former employees for theft, she did not pursue the charges for fear of retaliation (Doc. 1).

Plaintiffs allege that, between September 10, 2012 and November 12, 2012, Bush and Sutter signed a written contract of mandate, granting Bush the power to assist Sutter with her personal property, and health decisions; pursuant to that contract, Bush assisted Sutter in straightening out her finances so she could live within her social security income, cleaned and repaired her home, signed papers on Sutter's behalf with the her banker and her real estate agent, and instituted a daily routine of cleaning Sutter's house, preparing her meals, giving her medications, feeding her pets, doing her laundry, retrieving her mail, handling her business, running errands, and occasionally driving her places (Doc. 1).

Plaintiffs further allege that, around November 13 and 14, 2012, when Bush arrived at Sutter's home to begin his work day, he found her lying on the floor in her bedroom (Doc. 1).  Plaintiffs allege that, since that was the second such occurrence, Bush explained to Sutter that it was dangerous for her to live alone and that she needed 24 hour care (Doc. 1).  Plaintiffs allege that, instead of moving into a nursing home, Sutter decided to have Bush

move into her house and gave him permission to clear out two
adjacent bedrooms for his use (Doc. 1).

     Plaintiffs allege that, in November 2012, while Sutter was
hospitalized for an apparent stroke, Bush went to work at Sutter's
home, took care of her pets, cleaned up, then noticed the animals
were behaving strangely; when the dogs began barking, Bush looked
outside and saw a police officer reaching for his side arm and
yelling at the dogs to "get back" (Doc. 1). Plaintiffs allege
that, in response to questions by Officer Andre Williams, Bush
explained he worked for Sutter at her home, and that he was moving
into the house in anticipation of her returning from the hospital
and needing 24 hour care (Doc. 1). Plaintiffs allege that Officer
Williams then patted Bush down and arrested him for burglary (Doc.
1). Plaintiffs allege that Bush informed Williams that the cuff on
his left arm was too tight and causing him great discomfort, but
Officer Williams told him he needed to stay still (Doc. 1). Bush
alleges that, when the booking officer uncuffed him, he saw the
"dark deep blood clot grooves" several inches above his left wrist,
but he did not provide Bush with medical care (Doc. 1).

     Bush also alleges that Detective Bourgeois investigated the
case and decided the charges should be dismissed. Bush alleges
that, when Detective Bourgeois told Bush the charges would be
dismissed, he also told him that Sutter had made the McGlothlin's
her new mandataries, so Bush's contract of mandate was no longer

valid and he would be arrested if he attempted to enter Sutter's home or act on the contract.

For relief, Bush asks for monetary damages.

<u>Law and Analysis</u>

<u>Motion to Dismiss</u>

A motion to dismiss an action for failure to state a claim admits the facts alleged in the complaint, but challenges plaintiff's right to relief based upon those facts.  <u>Crowe v. Henry</u>, 43 F.3d 198, 203 (5th Cir. 1995).  In particular, a complaint should not be dismissed for failure to state a claim unless it appears beyond a doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.  <u>Hirras v. National Railroad Passenger Corp.</u>, 10 F.3d 1142, 1144 (5th Cir. 1994), vacated on other grounds, 512 U.S. 1231, 114 S.Ct. 2732 (1994); <u>Doe</u>, 753 F.2d at 1102.  For the purposes of a motion to dismiss for failure to state a claim upon which relief can be granted, the factual allegations of the complaint must be taken as true, and any ambiguities must be resolved in favor of the pleader.  <u>Doe v. U.S. Dept. of Justice</u>, 753 F.2d 1092, 1101 (D.C.Cir. 1985).  It is presumed that general allegations embrace the specific facts that are necessary to support the claim. <u>National Organization for Women, Inc. v. Scheidler</u>, 510 U.S. 249, 114 S.Ct. 798, 803 (1994), citing <u>Lujan v. Defenders of Wildlife</u>, 504 U.S. 555, 112 S.Ct. 2130, 2137 (1992).

Sheriff Hilton

Bush contends Sheriff Hilton is liable to him for failing to train the officers at the Rapides Parish Detention Center, where he was booked after arrest, to secure medical treatment for injured prisoners. Bush alleges that, when the booking officer uncuffed him on November 26, 2012, he saw the "dark deep blood clot grooves" several inches above Bush's left wrist, but he did not offer to provide Bush with medical care (Doc. 1).[2] Bush contends that, on January 22, 2013, he went to the Rapides Regional Medical Center for his handcuff injury, which was still visible (Doc. 1). Bush contends he was diagnosed with paresthesia[3] and prescribed Naprosyn (Doc. 1).

Although Bush did not specify whether he is suing Sheriff Hilton in his official or individual capacity, it is clear that Bush is suing Sheriff Hilton in his official capacity as a supervisor. Bush does not allege any personal involvement by

---

[2] Under the Eighth Amendment, a lack of proper inmate medical care can be "cruel and unusual punishment" only if it is "sufficiently harmful to evidence deliberate indifference to serious medical needs." Estelle v. Gamble, 429 U.S. 97, 97 S.Ct. 285 (1976).

[3] Paresthesia is a sensation of pricking, tingling, or creeping on the skin having no objective cause and usually associated with injury or irritation of a sensory nerve or nerve root. MEDLINEplus Health Information, Merriam-Webster Medical Dictionary: "Paresthesia," available at http://www.merriam-webster.com/medlineplus/paresthesia (a service of the U.S. National Library of Medicine and the National Institutes of Health).

Sheriff Hilton in the incident which would support a claim against him in his individual capacity.

The doctrine of respondeat superior, which makes an employer or supervisor liable for an employee's alleged tort, is unavailable in suits under 42 U.S.C. §1983. Thompkins v. Belt, 828 F.2d 298, 303 (5th Cir. 1987). Well settled Section 1983 jurisprudence establishes that supervisory officials cannot be held vicariously liable for their subordinates actions. Supervisory officials may be held liable only if they: (1) affirmatively participate in acts that cause constitutional deprivation; or (2) implement unconstitutional policies that causally result in plaintiff's injury. Mouille v. City of Live Oak, Tex., 977 F.2d 924, 929 (5th Cir. 1992), cert. den., 508 U.S. 951, 113 S.Ct. 2443 (1993); Thompkins, 828 F.2d at 303.

Bush contends Sheriff Hilton's failure to properly train the booking officer resulted in Bush being denied medical care. With regard to a cause of action for "failure to train", assessing an individual supervisor's liability under §1983 depends on a showing of (1) a "deliberately indifferent" policy of training that (2) was the "closely related" cause of the violation of the plaintiff's federally protected rights. Doe v. Taylor Independent School Dist., 15 F.3d 443, 453 (5th Cir.), cert. den., 513 U.S. 815, 115 S.Ct. 70 (1994). Regarding the element of causation, an isolated incident is not enough to show that a policy or custom exists.

7

Isolated violations are not the persistent, often repeated constant violations that constitute custom and policy.  In order to be a policy, inadequate training must be a product of a conscious choice.  <u>Hood v. Itawamba County, Miss.</u>, 819 F.Supp. 556, 564 (N.D.Miss. 1993), citing, <u>Palmer v. City of San Antonio</u>, 810 F.2d 514, 516 (5th Cir. 1987), and <u>Grandstaff v. City of Borger, Tex.</u>, 767 F.2d 161, 169 (5th Cir. 1985), cert. den., 480 U.S. 916, 107 S.Ct. 1369 (1989).  Also, <u>City of Oklahoma v. Tuttle</u>, 471 U.S. 808, 822, 105 S.Ct. 2427, 2436 (1985).

The existence of a constitutionally deficient policy cannot be inferred from a single wrongful act, where the policy relied upon is not itself unconstitutional.  <u>Thompkins</u>, 828 F.2d at 304.  Proof of a single incident of unconstitutional activity is sufficient to impose liability under <u>Monell</u> only if proof of the incident includes proof that it was caused by an existing, unconstitutional municipal policy, which policy can be attributed to a municipal policymaker.  <u>City of Oklahoma</u>, 471 U.S. at 823, 105 S.Ct. at 2436.

That a particular officer may be unsatisfactorily trained will not alone suffice to fasten liability on the policymaker, for the officer's shortcomings may have resulted from factors other than a faulty training program; adequately trained officers occasionally make mistakes.  A plaintiff must prove that a deficiency in the training program is closely related to the ultimate injury.  <u>City of Canton, Ohio v. Harris</u>, 489 U.S. 378, 109 S.Ct. 1197, 1206

8

(1989).

For a supervisor to be liable for failure to train, "the focus must be on the adequacy of the training program in relation to the tasks the particular officers must perform.  Mere proof that the injury (in this case, failure to provide medical care) could have been prevented if the officer had received better or additional training cannot, without more, support liability.  Moreover, for liability to attach based on an inadequate training claim, a plaintiff must allege with specificity how a particular training program is defective.  Roberts v. City of Shreveport, 397 F.3d 287, 293 (5th Cir. 2005).  See also, Steele v. Rowles, 389 F.3d 347 (5th Cir. 2010).

Bush contends Sheriff Hilton failed to properly train the booking officer to provide medical care for injured prisoners, and alleges an injury to his left wrist caused by the handcuffs.  However, Bush has not alleged how Sheriff's Hilton's training program is defective.  Bush alleges only that the booking officer was not properly trained based on the one cited incident.

Accepting Bush's allegations as true for purposes of this motion to dismiss, Bush's allegation that the booking officer was not properly trained because he did not offer Bush medical care is insufficient to state a claim that Sheriff Hilton's training program violated Bush's constitutional right to medical care.  Therefore, Sheriff's Hilton's motion to dismiss (Doc. 16) should be

9

granted.

Chief Loren Lampert

Bush contends that Chief Lampert, the Police Chief for the City of Alexandria, is liable to him for failing to properly train Officer Williams on how to restrain arrestees with handcuffs and how to check the tightness of the cuffs when the arrestee complains they are too tight, and for failing to properly train Detective Bourgeois concerning not threatening people with arrest for exercising their lawful rights.

Although Bush has not specified whether he is suing Chief Lampert in his official or individual capacity, it is clear that he is suing him in his official capacity as a supervisor. Bush has not alleged any facts indicating personal involvement in the incident by Chief Lampert which would support a claim against him in his individual capacity.

Bush contends Chief Lampert's failure to properly train Officer Williams in the use of handcuffs resulted in Bush being injured by improperly used handcuffs, and that his failure to properly train Detective Bourgeois regarding threats resulted in Bush being threatened for exercising his rights. However, again, Bush has not alleged or shown how Chief Lampert's training program is defective. Bush alleges only that Officer Williams was not properly trained in the use of handcuffs based on the fact that one of Bush's cuffs was too tight and Williams would not loosen it, and

that Detective Bourgeois was not properly trained because he warned Bush that he would be arrested if he re-entered Sutter's home or contacted Sutter.   Bush's allegations of single instances do not indicate a defective training program.   Moveover, it is noted that mere verbal threats or verbal harassment are not actionable under §1983 as violation of constitutional rights.   Bender v. Brumley, 1 F.3d 271, 274 n.4 (5th Cir. 1993), citing McFadden v. Luca, 713 F.2d 143, 146 (5th Cir.), cert. den., 464 U.S. 998, 104 S.Ct. 499, 78 L.Ed.2d 691 (1983).

Accepting Bush's allegations as true for purposes of this motion to dismiss, Bush's allegations are not sufficient to state a claim that Chief Lampert's training program violated Bush's constitutional rights.   Therefore, Chief Lampert's motion to dismiss (Doc. 14) should be granted.

Detective Wade Bourgeois

Bush contends that Detective Bourgeois threatened Bush with arrest if he attempted to enter Sutter's home or act on the contract.   Detective Bourgeois argues that Bush has failed to state a civil rights claim against him.

Mere verbal threats or verbal harassment are not actionable under §1983 as a violation of constitutional rights.   Bender v. Brumley, 1 F.3d 271, 274 n.4 (5th Cir. 1993), citing McFadden v. Luca, 713 F.2d 143, 146 (5th Cir.), cert. den., 464 U.S. 998, 104 S.Ct. 499 (1983).   Therefore, Bush's allegation that Detective

11

Bourgeois threatened to arrest him does not constitute a civil rights claim cognizable under Section 1983.  Since Bush has not stated a claim against Detective Bourgeois for violation of his constitutional rights, Detective Bourgeois' motion to dismiss (Doc. 17) should be granted and Bush's claims against Detective Bourgeois should be dismissed without prejudice.

## Cobnclusion

Based on the foregoing discussion, IT IS RECOMMENDED that Sheriff Hilton's, Chief Lampert's and Detetctive Bourgeois' motions to dismiss (Docs. 14, 16, 17) should be GRANTED and that Bush's claims against Sheriff Hilton, Chief Lampert, and Detective Bourgeois should be DISMISSED WITHOUT PREJUDICE.

Under the provisions of 28 U.S.C. § 636(b)(1)(c) and Fed.R.Civ.P. 72(b), the parties have **fourteen (14) days** from service of this Report and Recommendation to file specific, written objections with the Clerk of Court.  A party may respond to another party's objections within **fourteen (14) days** after being served with a copy thereof.  A courtesy copy of any objection or response or request for extension of time shall be furnished to the District Judge at the time of filing.  Timely objections will be considered by the district judge before he makes a final ruling.

**A PARTY'S FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FINDINGS, CONCLUSIONS AND RECOMMENDATIONS CONTAINED IN THIS REPORT WITHIN FOURTEEN (14) CALENDAR DAYS FROM THE DATE OF ITS SERVICE**

SHALL BAR AN AGGRIEVED PARTY, EXCEPT ON GROUNDS OF PLAIN ERROR, FROM ATTACKING ON APPEAL THE UNOBJECTED-TO PROPOSED FACTUAL FINDINGS AND LEGAL CONCLUSIONS ACCEPTED BY THE DISTRICT JUDGE.

THUS DONE AND SIGNED at Alexandria, Louisiana on this 31st day of May 2013.

_____
JAMES D. KIRK
UNITED STATES MAGISTRATE JUDGE

13