RECEIVED
USDC, WESTERN DISTRICT OF LA
TONY R. MOORE, CLERK
DATE 6/3/13
JDB

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

ALEXANDRIA DIVISION

| | |
|---|---|
| EDDIE JOE BUSH, et al.,<br>    Plaintiffs | CIVIL ACTION<br>SECTION "P"<br>NO. 1:13-CV-00452 |
| VERSUS | |
| FRED PHARIS, et al.,<br>    Defendants | JUDGE DEE D. DRELL<br>MAGISTRATE JUDGE JAMES D. KIRK |

REPORT AND RECOMMENDATION OF MAGISTRATE JUDGE

Before the court is a verified civil rights complaint filed pursuant to 42 U.S.C. §§ 1983, 1983 and 1985, by pro se plaintiffs Eddie Joe Bush ("Bush") and Joyce Ann Sutter ("Sutter") on March 1, 2013. The named defendants are attorney Fred Pharis, real estate agent Prissy Reap, Sean McGlothlin, Aleshia McGlothlin, Theresa Murphy (a hospital case worker employed at Christus St. Frances Cabrini Hospital), "Cabrini Notary Public," "Nurse Mike" (an employee of Christus St. Frances Cabrini Hospital), Diana Harris (administrator of Christus St. Frances Cabrini Hospital), Steven Wright (director of Christus St. Frances Cabrini Hospital), Officer Andre Williams (employed by the City of Alexandria Police Department), Detective Wade Bourgeois (employed by the City of Alexandria Police Department), attorney William B. Owens a/k/a Bill Owens, Chief Loren Lampert (Chief of the Alexandria City Police), and Sheriff William Earl Hilton (Rapides Parish Sheriff).

Murphy, the "Cabrini Notary Public," "Nurse Mike," Harris, and Wright, all of whom are employed at Christus St. Frances Cabrini Hospital, filed a motion to dismiss pursuant to Fed.R.Civ.P. rule 12(b) (Doc. 19), alleging a failure to state a claim on which relief can be granted, which plaintiffs oppose (Doc. 35).[1] That motion is now before the court for disposition.

Mandates

It is noted that plaintiff Joyce Sutter did not sign the complaint, but plaintiff Bush attached a copy of a written contract of mandate in which Sutter granted Bush the power to make financial, real estate and health care decisions for her. (See Doc. 1, agency contract between Sutter and Bush.)[2] Therefore, to the extent a lawsuit will protect Sutter's property interests, Bush may pursue it as Sutter's mandatary. See La.C.C. art. 3001. LSA-C.C. art. 2989 provides: "A mandate is a contract by which a person, the principal, confers authority on another person, the

___

[1] Although extraneous evidence outside of the pleadings is attached to the complaint, it will not be considered with regard to defendants' motions to dismiss. The extraneous evidence that Pharis' brief directs the court's attention to will not be considered. Therefore, defendants' motions are considered as motions to dismiss, and not as motions for summary judgment. See Baker v. Putnal, 75 F.3d 190, 196 (5th Cir. 1996); Fed.R.Civ.P. rule 12(b).

[2] Documents attached to the complaint are considered part of the pleading and not extrinsic evidence. Paulemon v. Tobin, 30 F.3d 307, 308-09 (2nd Cir. 1994); Hal Roach Studios v. Richard Feiner & Co., 896 F.2d 1542, 1555 n. 19 (9th Cir. 1990). Also, Nishimatsu Const. Co., Ltd. v. Houston Nat'l Bank, 515 F.2d 1200, 1206 (5th Cir. 1975); Fed.R.Civ.P. rule 10(c).

mandatary, to transact one or more affairs for the principal."

Although Sutter apparently became incapacitated before she went into the hospital, it bears noting that, pursuant to La.C.C. art. 3026, incapacity of the principal, "In the absence of contrary agreement, neither the contract nor the authority of the mandatary is terminated by the principal's incapacity, disability, or other condition that makes an express revocation of the mandate impossible or impractical." Therefore, the agency contract was not terminated by Sutter's incapacity.

Sutter passed away on Monday, May 20, 2013. LSA-C.C. art. 3024(1) supplies the *general* rule that the mandate and Bush's authority as mandatary terminated at the death of the decedent. However, Bush was bound to complete the mandate by defending and protecting the decedent's wishes after her death through successfully litigating the validity of the mandate and his actions as mandatary. LSA-C.C. art. 3030; In re Succession of Badeaux, 2998 CA 1085 (La. App. 1st Cir. 3/27/09) 12 So.3d 348, 354, writ den., 2009-C-1245 (La. 5/29/09), 9 So.3d 166. Therefore, to the extent Bush is attempting to protect Sutter's property interests, Bush's mandatary duty extends past the time of Sutter's death pursuant to his continuing obligation to ensure that Sutter's property and financial interests are protected. In re Succession of Badeaux, 12 So.3d at 354.

Although some of the defendants argue Bush's mandate was

3

terminated when Sutter executed a new mandate in favor of the McGlothlins after she had a stroke, defendants have not argued that Bush's mandate was ever invalid.

It is not necessary to decide which mandates were valid, and when, in order to decide this motion.

<u>Allegations in the Complaint</u>

Plaintiffs allege that, in September 2012, Sutter, an 81 year old woman who lived alone at 431 Camille Street in Alexandria, Louisiana and used a wheel chair, offered to employ Bush, a friend and former employee, because her four late employees had quit or been fired; at least one of the former employees (who had apparently had a revocable power of attorney) had stolen money and charged over $10,000 on her credit card, they had left her home in a grave state of neglect and disrepair, and they had not paid her bills (Doc. 1). Plaintiffs contend that Sutter's pets' feces were scattered throughout the house, there was trash and garbage strewn about, and her utilities had been cut off. Plaintiffs allege that, although Sutter filed a police report against the four former employees for theft, she did not pursue the charges for fear of retaliation (Doc. 1).

Plaintiffs allege that, between September 10, 2012 and November 12, 2012, Bush and Sutter signed a written contract of mandate, granting Bush the power to assist Sutter with her personal property, and health decisions; pursuant to that contract, Bush

assisted Sutter in straightening out her finances so she could live within her social security income, cleaned and repaired her home, signed papers on Sutter's behalf with the her banker and her real estate agent, and instituted a daily routine of cleaning Sutter's house, preparing her meals, giving her medications, feeding her pets, doing her laundry, retrieving her mail, handling her business, running errands, and occasionally driving her places (Doc. 1).

Plaintiffs further allege that, around November 13 and 14, 2012, when Bush arrived at Sutter's home to begin his work day, he found her lying on the floor in her bedroom (Doc. 1). Plaintiffs allege that, since that was the second such occurrence, Bush explained to Sutter that it was dangerous for her to live alone and that she needed 24 hour care (Doc. 1). Plaintiffs allege that Bush explained to Sutter that she could give up her possessions and live in a nursing home, or she could continue to live in her home if he moved in with her and took take care of her; Sutter chose to have Bush move in with her and gave him permission to clear out two adjacent bedrooms for his use (Doc. 1).

Plaintiffs further allege that, on November 22, 2012 (Thanksgiving Day), Bush (who had not yet moved in) arrived at Sutter's residence and did his daily work, then left to attend a Thanksgiving dinner at his son's home; Bush returned later with a meal for Sutter and to take her to visit her good friend (and his

5

ex-wife), Gwen Bush, who was in a nursing home in Pineville, Louisiana (Doc. 1). Plaintiffs allege that Bush found Sutter in her wheelchair in the kitchen in a state of "paralyzed" shock; when Bush was get Sutter to respond to him, he called 911 for emergency help (Doc. 1). Plaintiffs allege that a fire department rescue truck and an ambulance arrived, and EMTs stabilized Sutter and asked Bush which hospital they should take her to; Bush told them to take her to Christus St. Frances Cabrini Hospital because it was the closest and she has been there before (Doc. 1). Plaintiffs allege that Bush then secured Sutter's pets and followed the ambulance (Doc. 1).

Plaintiffs allege that, between November 22-25, 2012, Bush was in contact with Prissy Reap (Sutter's realtor), attorney Bill Owens, Theresa Murphy (Sutter's caseworker at Cabrini Hospital), and Dr. Thuma at Cabrini Hospital (Doc. 1). Plaintiffs allege that Murphy advised Bush that Prissy Reap had said Bush may not have proof of his "legal relationship" to Sutter, and Dr. Thuma told Bush to bring whatever he had showing his legal relationship to Sutter to the hospital because she had come very close to dying and a decision needed to be made immediately (Doc. 1). Plaintiffs allege that Bush gave Dr. Thuma a copy of his September 28, 2012 contract with Sutter and decided an attempt should be made to revive her if her assisted breathing failed (Doc. 1). Plaintiffs allege that Bush then continued to care for Sutter's home and pets

6

and continued to prepare to move in with her (Doc. 1). Plaintiffs allege that Bush saw Sean McGlothlin (one of Sutter's neighbors) frequently while he worked at Sutter's house, but never spoke to him (Doc. 1).

Plaintiffs allege that, on November 26, 2012, Bush visited Sutter at the hospital before beginning his work day; the night before, Dr. Thuma had advised Bush that Sutter still had not recovered her ability to speak and still needed assistance breathing (Doc. 1). Plaintiffs allege that Bush stopped by the hospital again that evening and spoke to Sutter, she then opened her eyes and spoke to Bush about her pets and the progress he was making moving in (Doc. 1). Plaintiffs allege that Bush then left Sutter, and stopped to talk to Murphy, who told him he needed a medical power of attorney, but that he could not get one until Sutter regained her power of speech (Doc. 1). Plaintiffs allege that Bush told Murphy that Dr. Thuma had told him his contract with Sutter was sufficient to provide him with a medical power of attorney, that he had made a decision to revive her if she needed assisted breathing again, and that he had just left Sutter and she had been speaking with him (Doc. 1). Plaintiffs allege that "Nurse Mike," who was present during the conversation between Bush and Murphy, retrieved Sutter's medical file (Doc. 1). Plaintiffs allege that Murphy, "Nurse Mike," a notary public employed at Cabrini Hospital, and two other female employees at Cabrini

7

Hospital conferred, studied the contract, and questioned Sutter about the contract, who made decisions for her, and where she would like to live (Doc. 1).

Plaintiffs allege that, the next day, Bush went to work at Sutter's home, took care of her pets, cleaned up, the noticed the animals were behaving strangely; when the dogs began barking, Bush looked outside and saw a police officer reaching for his side arm and yelling at the dogs to "get back" (Doc. 1). Plaintiffs allege that, in response to questions by Officer Andre Williams, Bush explained he worked for Sutter at her home, that he was moving into the house in anticipation of her returning from the hospital and needing 24 hour care (Doc. 1). Plaintiffs allege that Officer Williams then patted Bush down and arrested him for burglary; when Bush saw Sean McGlothlin and asked him to come over than explain to the officer that he worked for Sutter, Officer Williams told McGlothlin to stay away (Doc. 1). Plaintiffs allege that attorney Fred Pharis was then called to the scene and Bush's keys to Sutter's home were handed to Pharis (Doc. 1). Plaintiffs allege that Sutter's pets were removed from the house and taken to the animal shelter (Doc. 1). Plaintiffs allege that Officer Williams then informed Bush that McGlothlin had said he knew Bush worked outside of Sutter's home, but not in it (Doc. 1). Plaintiffs allege that Bush informed Williams that the cuff on his left arm was too tight and causing him great discomfort, but Officer

Williams told him he needed to stay still (Doc. 1).

Plaintiffs further allege that Attorney Pharis told Sutter it was very important that she lie and tell Officer Williams that Bush was not allowed to work in her house, or else he would get away with stealing from her (Doc. 1). Plaintiffs allege that, when Sutter became agitated, Pharis and Williams went to Cabrini and told Sutter what to say (Doc. 1). Plaintiffs allege that Bush was arrested and charged with simple burglary of an inhabited dwelling, and his son bonded him out (Doc. 1).

Plaintiffs allege that, when Bush was released, he visited Sutter and was told by Murphy that Sutter had changed her mind and decided to go to a nursing home (Doc. 1). Plaintiffs allege that Bush also learned that Sean and Aleshia McGlothlin had visited Sutter, told her they had saved her home from being robbed by Bush, and placed themselves on Sutter's contact list (Doc. 1). Plaintiffs allege that, when Bush returned later in the day, Sutter had been removed from her room and no one would tell her where she was; Bush was removed from the hospital and forbidden to contact Sutter on threat of arrest (Doc. 1). Plaintiffs allege the hospital administrator then appeared and told Bush that the hospital had a duty to protect Sutter, that she was not allowed to have any visitors, and that Bush needed to contact Sutter's attorney if he wanted information about her, but would not tell Bush the attorney's name (Doc. 1).

9

<u>Law and Analysis</u>

<u>Motion to Dismiss</u>

A motion to dismiss an action for failure to state a claim admits the facts alleged in the complaint, but challenges plaintiff's right to relief based upon those facts. <u>Crowe v. Henry</u>, 43 F.3d 198, 203 (5th Cir. 1995). In particular, a complaint should not be dismissed for failure to state a claim unless it appears beyond a doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief. <u>Hirras v. National Railroad Passenger Corp.</u>, 10 F.3d 1142, 1144 (5th Cir. 1994), vacated on other grounds, 512 U.S. 1231, 114 S.Ct. 2732 (1994); <u>Doe</u>, 753 F.2d at 1102. For the purposes of a motion to dismiss for failure to state a claim upon which relief can be granted, the factual allegations of the complaint must be taken as true, and any ambiguities must be resolved in favor of the pleader. <u>Doe v. U.S. Dept. of Justice</u>, 753 F.2d 1092, 1101 (D.C.Cir. 1985). It is presumed that general allegations embrace the specific facts that are necessary to support the claim. <u>National Organization for Women, Inc. v. Scheidler</u>, 510 U.S. 249, 114 S.Ct. 798, 803 (1994), citing <u>Lujan v. Defenders of Wildlife</u>, 504 U.S. 555, 112 S.Ct. 2130, 2137 (1992).

<u>The Cabrini Hospital Employee-Defendants</u>

Plaintiffs allege that Murphy (a Cabrini Hospital case worker), the Cabrini Notary Public, "Nurse Mike," Harris (the

10

Cabrini Hospital Administrator), and Wright (the director of Cabrini Hospital) are liable to them for interfering with their contractual relationship, preventing them from communicating with each other, and conspiring to facilitate defendants Pharis and Williams in obtaining a coerced statement from Sutter while she was hospitalized.

First, it is noted that full names were never provided for the "Cabrini Notary Public" and "Nurse Mike." Second, it is noted that, although defense counsel filed this motion to dismiss on behalf of the "Cabrini Hospital Administrator," the undersigned court assumes counsel is referring to Diana Harris, the *named* defendant who is alleged to be the Cabrini hospital administrator. Finally, it is noted that all of the service returns are signed as having been served by a private process server, Mario Rosenthal, and not by plaintiff Bush, as erroneously alleged by defense counsel in the brief.

Defense counsel contends service was not proper because plaintiff Bush failed to personally serve the defendants and because Bush is prohibited from effecting service himself. However, the service returns show that service was effected by a private process server and was accepted on behalf of the defendants at their place of employment by the agent for service of process appointed to do so by the hospital's Risk Manager (Doc. 6). Defense counsel has not shown that defendants did not authorize the

11

agent to accept service for them at work, possibly as a condition of their employment at the hospital.

Defense counsel also disputes Bush's right to act as Sutter's attorney. As discussed above, Bush apparently filed this suit as Sutter's mandatary, and not as an attorney. Further discussion of that issue is not required at this point.

It is obvious that the plaintiffs' civil rights case against Murphy, Wright, Harris, "Nurse Mike," and the "Cabrini Notary Public" should be dismissed because they are not state actors. Section 1983 prescribes redress for conduct by any person who, under color of state law, acts to deprive another person of any right, privilege, or immunity secured by the Constitution and laws of the United States. 42 U.S.C. §1983. A plaintiff in a civil rights suit must show that the conduct complained of was committed by a person acting under color of state law. Lugar v. Edmondson Oil Co., Inc., 475 U.S. 922, 937, 102 S.Ct. 2744, 2753 (1982). Purely private conduct, no matter how wrongful, is not within the protective orbit of Section 1983. Shelley v. Kraemer, 334 U.S. 1, 13, 68 S.Ct. 836, 842 (1948).

The traditional definition of acting under color of state law requires that the defendants in a §1983 action have exercised power possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law. To constitute state action, the deprivation must be caused by the

exercise of some right or privilege created by the state or by a person for whom the state is responsible and the party charged with the deprivation must be a person who may fairly be said to be a state actor. <u>West v. Atkins</u>, 487 U.S. 42, 47, 108 S.Ct. 2250, 2254 (1988).

In the case at bar, Murphy, Wright, Harris, Nurse Mike and the Cabrini Notary Public are all private persons who were acting in their capacities as employees of the Christus St. Frances Cabrini Hospital, which is a privately operated hospital. Since these defendants are not state actors, plaintiffs have not stated a claim against Murphy, Wright, Harris, Nurse Mike and the Cabrini Notary Public pursuant to Section 1983 or pursuant to Section 1985 (prohibiting conspiracy to interfere with civil rights).

Since defendants Murphy, Wright, Harris, Nurse Mike and the Cabrini Notary Public are not state actors, defendants' motion to dismiss (Doc. 19) should be granted and plaintiffs' action against Murphy, Wright, Harris, Nurse Mike and the Cabrini Notary Public should be dismissed without prejudice to any state law claims plaintiffs may pursue against these defendants in state court.

<u>Conclusion</u>

Based on the foregoing discussion, IT IS RECOMMENDED that defendants' motion to dismiss (Doc. 19) be GRANTED and that plaintiffs' action against Murphy, Wright, Harris, Nurse Mike and the Cabrini Notary Public be DISMISSED WITHOUT PREJUDICE.

Under the provisions of 28 U.S.C. § 636(b)(1)(c) and Fed.R.Civ.P. 72(b), the parties have **fourteen (14) days** from service of this Report and Recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within **fourteen (14) days** after being served with a copy thereof. A courtesy copy of any objection or response or request for extension of time shall be furnished to the District Judge at the time of filing. Timely objections will be considered by the district judge before he makes a final ruling.

**A PARTY'S FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FINDINGS, CONCLUSIONS AND RECOMMENDATIONS CONTAINED IN THIS REPORT WITHIN FOURTEEN (14) CALENDAR DAYS FROM THE DATE OF ITS SERVICE SHALL BAR AN AGGRIEVED PARTY, EXCEPT ON GROUNDS OF PLAIN ERROR, FROM ATTACKING ON APPEAL THE UNOBJECTED-TO PROPOSED FACTUAL FINDINGS AND LEGAL CONCLUSIONS ACCEPTED BY THE DISTRICT JUDGE.**

THUS DONE AND SIGNED at Alexandria, Louisiana, on this 31st day of May 2013.

---
JAMES D. KIRK
UNITED STATES MAGISTRATE JUDGE